## Amos J. Tenney *et al. versus* Samuel How.

fn the *St.* 1830, *c.* 99, § 6, which enacts " that if any side or sides of sole leather shall vary, when *thoroughly dried,* so as to weigh five per cent more or less than the weight marked thereon by any inspector, the inspector who inspected the same shall be subject to the payment of the whole variation, at a fair valuation, to be recovered by the party injured thereby," the words *thoroughly dried* mean that the leather is to be *suitably and sufficiently dried, so as to be in a proper state for sale and use.*

THIS was an action of the case, brought by the plaintiffs as the purchasers of sole leather which had been inspected by the defendant as inspector-general of sole leather, under *St.* 1830, *c.* 99, § 6 ; which enacts, that if any side or sides of sole leather shall vary, when thoroughly dried, so as to weigh five per cent more or less than the weight marked thereon by any inspector, the inspector who inspected the same shall be subject to the payment of the whole variation, at a fair valuation, to be recovered by the party injured thereby.

The plaintiffs proved that the defendant inspected a quantity of sole leather and marked the weight thereof ; that the ·laintiffs purchased the same at the weight marked by the inspector and it varied ten per cent from the mark, after the plaintiffs had put it out to dry in the sun and air three or four hours in July.

The parties agreed upon the damages, if by law the plaintiffs were entitled to recover.

It was contended on the part of the defendant, that the statute was not to have a literal construction ; that the phrase " thoroughly dried," means *dried sufficiently to be merchantable.* And he offered to prove, that sole leather, thoroughly dried, within the meaning of the statute, if taken from a proper leather store and exposed to the sun for three hours in July or August, will lose from five to ten per cent in weight ; and that if replaced in the leather store, it will in a short time, say five or six days, regain its original weight ; that leather so thoroughly dried is injured by being exposed to the sun, by being cracked. The defendant further contended, that the sole leather in question ought not to have been exposed to the action of the sun and air before the plaintiffs weighed it, but

should have been weighed as it came out of the leather store.

If the defendant's construction of the statute was correct, a new trial was to be ordered.

*Saltonstall*, for the defendant.

*Huntington*, for the plaintiffs.

MORTON J. delivered the opinion of the Court. This is an action on the case, founded on the sixth section of *St.* 1830, c. 99. It is brought against the inspector-general of leather, by purchasers of leather, to recover damages in the nature of a penalty. The plaintiffs' right to recover depends upon the construction of the statute. The words of the statute are, "that if any side or sides of sole leather shall vary when *thoroughly dried*, so as to weigh five per cent more or less than the weight marked thereon by any inspector, the inspector who inspected the same shall be subject to the payment of the whole variation, at a fair valuation, to be recovered by the party injured thereby."

The plaintiffs proved that a quantity of leather purchased by them, and inspected by the defendant, actually weighed ten per cent less than it was marked. Upon this the plaintiffs claimed to recover for the deficiency, according to the fair value of the leather. But there was no evidence that this leather was injured.

In defence it is contended, that the leather, when weighed by the plaintiffs, was not in a proper state to be weighed, but had been unreasonably dried. And the defendant offered to show that leather in a proper state to be sold and to be weighed and marked, will, when exposed to the sun and air in the manner the plaintiffs' was, shrink more than ten per cent. Does this amount to a legal defence to the action?

The statute doubtless was made principally for the protec tion of purchasers. And was intended to save them from imposition in false weights and in the sale of leather insufficiently dried. We have met with not a little difficulty in ascertaining the true meaning of the clause under consideration. This has arisen in part from the phraseology of the statute, and in part from a difficulty inherent in the subject matter.

We have examined the whole statute with care. The first

section provides for the appointment of the inspector-general and his deputies, for their giving bonds and taking an oath. The second prohibits the sale of all sole leather not inspected. The third and fourth prescribe the duty of the inspectors, the manner in which it shall be performed, and imposes a penalty upon any one who shall counterfeit or alter any marks. The fifth fixes the inspectors' compensation ; the sixth imposes penalties or liabilities upon them ; and the seventh provides for a return of all leather inspected by the deputies to the inspector-general, and by him to the secretary of the Commonwealth.

The object of the penalty was to secure fidelity and skill in the performance of the duties imposed upon the inspectors. They are bound, when requested, to inspect all leather in a proper state for inspection. And it would be a violation of their duty to inspect and mark any which was not in a proper state. The inquiry is, what is this state ? If the leather is too moist when weighed, then by drying it properly it will fall below the marked weight and the inspector will be liable to the purchaser. If too dry, then when packed in a leather house and restored to a proper state of moisture it will overrun the marked weight and render the inspector liable to the seller. It may be difficult to fix upon the proper medium.

If we take the plaintiffs' construction, which may be deemed the most literal one, it would seem that the inspector would be liable at all events to the one party or the other. If the leather be weighed and marked in the state in which it is usually kept in store, the purchaser, by exposing it to the air, and drying it, would reduce the weight more than five per cent and establish his right to recover of the inspector. And if on the other hand the inspector required it to be exposed to and dried in the sun when he weighed and marked it, then by packing it in a store it would gain so much in weight as to render the inspector liable to the seller. Indeed sole leather is so much affected by its state of moisture or dryness, that upon this construction of the statute the inspector, in some cases, might be liable to both parties. The leather might be in such a state, that the purchaser by drying it might reduce it over five per cent, and the seller by moistening it might increase it over five per cent. And the inspector be made liable to both. A con-

struction, however literal, so fraught with injustice and absurdity, cannot be adopted.

It is manifest that the legislature intended that the inspector should fix upon some proper state of the leather for inspection, and that, to test the accuracy of the weight fixed by the inspector, it must be reweighed in a similar state. This state is denominated " *thoroughly dried.*" And the difficulty consists in affixing a clear and definite meaning to these words. The choice of them probably was not a fortunate one. But still, having reference to the object and scope of the act and the several provisions in it, we think these words mean *suitably and sufficiently dried, — put into a state and condition fit and proper for sale and use.* It is the duty of the inspector to see that it is in this state when he inspects, weighs, and marks it. And if the buyer or seller again weighs it with a view to ascertain the correctness of the marks, it must be reweighed when in the same state or condition. And if the inspector will take care that when he inspects leather, it be in the state aforesaid, be correctly weighed and marked, and in other respects well manufactured, he will discharge his duty and not be liable to any penalty to buyer or seller, however much the leather, in any other situation, may vary in its weight from his marks.

Now we know the rule above laid down is not so clear and precise as we could desire ; but we know not how to make it plainer. And we think we may safely rely upon the practical knowledge and experience of the jury to make a proper application of it.

The case at bar must go to the jury with the above explanation of the statute. If the plaintiff can show that his leather, when in the situation which we understand to be indicated by the words " thoroughly dried," weighed less or more, by five per cent, than it was marked, he will prevail ; otherwise he must fail.

*New trial ordered.*